## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| MORRIS ROUTING TECHNOLOGIES, LLC | |
| Plaintiff, | Civil Action No. 4:25-cv-852 |
| v. | |
| RIBBON COMMUNICATIONS, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Morris Routing Technologies, LLC ("MRT" or "Plaintiff"), for its Complaint against Defendant Ribbon Communications, Inc. ("Defendant," or "Ribbon") alleges the following:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

### THE PARTIES

2.      Plaintiff MRT is a limited liability company organized under the laws of the State of Texas with a place of business at 1312 14TH St. Suite 204, Plano TX 75074.

3.      Defendant Ribbon Communications, Inc. is a corporation organized under the laws of Delaware.  Since October 27, 2017, Ribbon has been registered to do business in Texas under Texas SOS file number 802848354.  Ribbon may be served through its registered agent for service, United Agent Group Inc., 5444 Westheimer #1000, Houston, TX 77056 USA.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

7.      Ribbon is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

8.      This Court has general and specific personal jurisdiction over the Defendants under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.  Ribbon has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district.  Venue is also proper in this district because Ribbon has a regular and established place of business and has committed acts of infringement in this district.

9.      For example, Ribbon has regular and established places of business and is headquartered at 6500 Chase Oaks Blvd., Suite 100, Plano, Texas 75023[1].

10.     Ribbon has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits directly related to Ribbon's infringement of the Patents-In-Suit.

---

[1] https://ribboncommunications.com/company/get-help/locations.

11.     Ribbon's infringement has thus caused substantial injury to MRT, including in this judicial district.

## BACKGROUND

### The Inventions of the Patents-in-Suit

12.     Mr. Robert Paul Morris is the inventor of U.S. Patent Nos. 10,652,133 ("the '133 patent"; Exhibit A), 10,574,562 ("the '562 patent"; Exhibit B), 10,652,134 ("the '134 patent"; Exhibit C), 10,757,010 ("the '010 patent"; Exhibit D), 10,389,624 ("the '624 patent"; Exhibit E), 10,404,583 ("the '583 patent"; Exhibit F), 10,594,594 ("the '594 patent"; Exhibit G) (collectively, the "Patents-in-Suit").  True and correct copies of the Patents-in-Suit are attached as Exhibits A-G.

13.     The Patents-in-Suit resulted from the pioneering efforts of Mr. Morris (hereinafter "the Inventor") in the area of segment-based routing ("SR").  These efforts resulted in the development of methods and apparatuses for improving the routing, provisioning and transport of data packets across networks in the 2012 timeframe using SR over Multiprotocol Label Switching ("MPLS") and IPv6 data planes (*see, e.g.,* '133 patent, col. 20:11-45), which are now referred to as "SR-MPLS" and "SRv6" respectively.

14.     At the time of these pioneering efforts, the most widely implemented technology used to address network traffic engineering was IP-based forwarding using a distributed control plane as well as constrained shortest-path forwarding.  In traditional IP/MPLS networks, routing decisions are made based on destination IP addresses, and packet forwarding decisions are determined hop-by-hop based on routing tables.

15.     MPLS introduced the concept of label switching, where packets are assigned labels at ingress routers and forwarded based on these labels rather than IP addresses, which can improve forwarding efficiency and allow for traffic engineering.  However, explicit state information had

to be maintained at all hops along an MPLS path, leading to scalability problems in the control plane and the data plane.  Additionally, per-connection traffic steering did not take advantage of load balancing offered by equal cost multipath routing typically used in IP networks.

16.     The Inventor conceived of the inventions claimed in the Patents-in-Suit as a way to improve addressing.  (*See, e.g.,* '133 patent, col. 2:57-59.)  Prior to the Inventor's efforts, Internet protocol dealt primarily with addresses and left mapping from names to addresses and mapping from local net addresses to routes to other protocol layers.  The claimed inventions of the Patents-in-Suit establish new relationships between and among names, addresses and routes to improve network operations.

17.     The claimed inventions of the Patents-in-Suit allow the source to choose a path and encode it in the packet header as a sequence of identifiers that identify segments.  (*See, e.g.*, '133 patent, col. 18:55-20:45; col. 21:12-23:7; col. 33:13-61; Figs. 2, 9-11, 13.)  Using the claimed inventions of the Patents-in-Suit, networks no longer need to maintain a per-application and per-flow state and need only obey the forwarding information provided in the packet.  This results in a dramatic reduction in the per-flow state that needs to be maintained in network nodes supporting traffic engineered paths.  For example, instead of relying on a complex network of label-switched paths (LSPs) established by control protocols like LDP (Label Distribution Protocol) or RSVP-TE (Resource Reservation Protocol - Traffic Engineering), the inventions claimed in the Patents-in-Suit use source routing where a packet's path through the network is identified in the packet.  (*See, e.g.*, '133 patent, col. 24:61-28:60; col. 30:54-63; col. 38:42-52; col. 41:49-57.)

18.     The Inventor conceived of different ways to implement segment-based routing, including with MPLS-based and IPv6-based networks.  For example, with the claimed inventions of the Patents-in-Suit, a segment identifier can be embodied as an MPLS label and a plurality of

segment identifiers can be included in a sequence thereof.  The first segment identifier of the sequence is processed and upon completion, such segment identifier is removed from the sequence. By removing reliance on label-switched paths established by control protocols, the network architecture is simplified and has greater scalability and flexibility.

19.    In another example, the claimed inventions of the Patents-in-Suit extend IPv6 and allow SR over the IPv6 data plane.  The claimed inventions enable use of multiple segment identifiers embodied as IPv6 addresses in headers and a plurality of segment identifiers embodied as a sequence of IPv6 addresses. A segment identifier is indicated by the destination address of the packet and a pointer another segment identifier.  This allows even more precise control over packet forwarding and even greater flexibility and scalability.

20.    With the inventions claimed in the Patents-in-Suit, network operators can specify explicit paths for packets to travel through the network and can also leverage IPv6's larger address space to improve scalability and define and manage greater numbers of explicit paths.  This also allows the inclusion of service functions directly into the header providing for servicing chaining and integration of network functions.  There is reduced need for state management in routers and because packets carry their path information, it is more secure because of the difficulty attackers face manipulating or spoofing routing information now carried in the packet.

21.    Using the claimed inventions, network bandwidth is used more effectively and performance is optimized.  The control plane is greatly simplified and the amount of state information maintained by network nodes is reduced significantly.  There is less reliance on complex configurations and protocols to control the flow of traffic through a network because operators can define explicit paths.  (*See, e.g.,* '133 patent, col. 24:61-28:60; col. 30:54-63; col. 38:42-52; col. 41:49-57.) This facilitates service chaining where network operators define paths

that include service nodes such as firewalls and intrusion detection systems, to improve security, and load balancers, to optimize performance.  This results in costs savings by reducing the need for over-provisioning of network resources and improving the overall efficiency of the network infrastructure.  There is lower latency and traffic is protected against link and node failures without requiring burdensome additional signaling requirements in the network while providing optimum backup paths.

### **Advantage Over the Prior Art**

22.     The patented inventions disclosed in the Patents-in-Suits, provide many advantages over the prior art, and in particular improve the operations of networks using a path-based protocol address.  (*See, e.g.,* '133 patent at col. 2:7-59.)  One advantage of the patented invention is that fewer nodes, in particular path nodes, are required to maintain state information for each path in a network. (*See, e.g.,* '133 patent at col. 30:54-63.)

23.     Another advantage of the patented invention is that utilizing path information in the packet header to route a packet through a network reduces or eliminates the need for additional protocols.  (*See, e.g.,* '133, col. 41:49-57.)

24.     Another advantage of the patented invention is that specific network paths may be specified using path information in the packet header, which allows precise traffic control and selective routing for various purposes such as reduced power consumption, decreased processing time or other cost-saving measures.  (*See, e.g.,* '133 patent, col. col. 23:25-32; col. 51:4-10; col. 52:13-29.)

25.     Yet another advantage of the patented invention is dynamic routing that responds to disruptions in the network by updating the routing path through the network in response.  (*See, e.g.,* '133 patent at col. 35:34-59; col. 36:64-37:51; col. 50:14-18.)  An operation command may

be included in the header so that as the data packet is routed through a path node it is routed through a particular node capable of performing the operation identified by the command in the header. (*See, e.g,* '133 patent at col. 47:28-33; col. 50:22-28.)

26.     Because of these significant advantages that can be achieved through the use of the patented inventions, MRT believes that the Patents-in-Suit present significant commercial value for companies like Ribbon.  Indeed, SR has been identified as a key enabling technology for 5G. SRv6 can replace GTP-U and also any underlay transport layers and be used as the only transport layer in 5G, dramatically simplifying network operations while providing greater traffic engineering control and enabling other capabilities such as service chaining and network slicing, a main feature of 5G.[2]  SR is a key enabler for traffic engineering[3] and SDN[4], and network slicing technology such as in 5G."[5]

**Technological Innovation**

27.     The patented inventions disclosed in the Patents-in-Suit resolves technical problems related to traffic engineering in networks, particularly the complexity and scalability problems presented by the incredible growth in networking and the Internet.  As the Patents-in-Suit patent explain, one of the limitations of the prior art as regards network routing was that the

---

[2] *See, e.g.*, https://www.segment-routing.net/images/ACG_Segment_Routing_201808.pdf.
[3] https://ribboncommunications.com/company/media-center/blog/how-traffic-engineering-can-lead-smooth-transition-5g.
[4] *See, e.g.*, https://ribboncommunications.com/company/media-center/blog/how-service-providers-can-improve-network-performance-post-pandemic-world-traffic-engineering.
[5] *See, e.g.*,
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/White%20Papers/WP%20Segment%20Routing%20in%20Packet%20Transport.pdf;
https://ribboncommunications.com/company/media-center/blog/how-traffic-engineering-can-lead-smooth-transition-5g; https://ribboncommunications.com/company/media-center/blog/network-slicing-its-not-just-about-5g.

approach traditionally used for addressing and routing, and the effect on network latency.  (*See,*
*e.g.,* '133 patent, col. 2:7-59.)

28.      The claims of the Patents-in-Suit do not merely recite the performance of some
well-known business practice from the pre-Internet world along with the requirement to perform
it on the Internet.  Instead, the claims of the Patents-in-Suit recite inventive concepts that are deeply
rooted in engineering technology, and overcome problems specifically arising out of how to
efficiently and effectively manage network traffic with optimum utilization of network resources.
(*See, e.g.*, '133 patent, col. 50:58-51:10.)

29.      In addition, the claims of the Patents-in-Suit recite inventive concepts that improve
the functioning of network hardware such as routers for transferring data packets through a
network, particularly by reducing the demand on transit nodes and egress nodes to maintain state
information and reducing the number of protocols required.  (*See, e.g.*, '133 patent, col. 41:49-57.)

30.      Moreover, the claims of the Patents-in-Suit recite inventive concepts that are not
merely routine or conventional use of transferring information.  Instead, the patented invention
disclosed in the Patents-in-Suit provides a new and novel solution to specific problems related to
improving network performance and packet routing through networks that are scalable and
dynamic.

31.      And finally, the patented inventions disclosed in the Patents-in-Suit do not preempt
all the ways that packet routing may be used to improve network trafficking, nor do the Patents-
in-Suit patent preempt any other well-known or prior art technology.

32.      Accordingly, the claims in the Patents-in-Suit recite a combination of elements
sufficient to ensure that the claims in substance and in practice amount to significantly more than
a patent-ineligible abstract idea.

**Internet Engineering Task Force (IETF) and Standard Setting Organizations**

33.     The IETF is a standards setting organization.   It publishes technical documents referred to as RFCs that define technical foundations and specify application protocols.[6]  Each RFC is a product of the IETF and represents the consensus of the IETF community.

34.     The IETF has a working group, SPRING, which has published a number of RFCs related to SR, including RFC 8402, RFC 8660, RFC 8663, RFC 8754, RFC 8986, RFC 9256 and RFC 9352 (collectively "SR RFCs").  Ribbon has been involved with SPRING and the SR RFCs.[7]

35.     RFC 8402 is entitled "Segment Routing Architecture" and specifies an architectural framework and requirements for implementing SR, including both SR-MPLS and SRv6.[8]

36.     RFC 8660 is entitled "Segment Routing with the MPLS Data Plane" and "specifies the forwarding behavior to allow instantiating SR over the MPLS data plane (SR-MPLS)."[9]

37.     RFC 8663 is entitled "MPLS Segment Routing over IP" and "describes how SR-MPLS-capable routers and IP-only routers can seamlessly coexist and interoperate through the use of SR-MPLS label stacks and IP encapsulation/tunneling such as MPLS-over-UDP . . . ."[10]

38.     RFC 8754 is entitled "IPv6 Segment Routing Header (SRH)" and "describes the SRH and how it is used by nodes that are Segment Routing (SR) capable."[11]

39.     RFC 8986 is entitled "Segment Routing over IPv6 (SRv6) Network Programming" and "defines the SRv6 Network Programming concept and specifies the base set of SRv6 behaviors that enables the creation of interoperable overlays with underlay optimization."[12]

---

[6] https://www.ietf.org/process/rfcs/.
[7] https://mailarchive.ietf.org/arch/browse/spring/?q=ribbon# ( Alexander Vainshtein).
[8] https://datatracker.ietf.org/doc/rfc8402/.
[9] https://datatracker.ietf.org/doc/html/rfc8660.
[10] https://datatracker.ietf.org/doc/html/rfc8663.
[11] https://datatracker.ietf.org/doc/html/rfc8754
[12] https://datatracker.ietf.org/doc/html/rfc8986

40.     RFC 9256 is entitled "Segment Routing Policy Architecture" and "updates RFC 8402 as it details the concepts of SR Policy and steering into an SR Policy."[13] "SR Policy is an ordered list of segments (i.e., instructions) that represent a source-routed policy."[14]

41.     RFC 9352 is entitled "IS-IS Extensions to Support Segment Routing over the IPv6 Data Plane" and "describes the IS-IS extensions required to support SR over the IPv6 data plane."[15]

42.     Numerous companies supply interoperable equipment and software solutions that support SR-capable networks and the requirements set forth in the SR RFCs including Ribbon.[16] Numerous companies also contributed to the SR RFCs, including Ribbon customers such as Verizon and technology partners like Ericsson.[17]

43.     The European Telecommunications Standards Institute ("ETSI") is another standard setting organization that develops global standards that ensure interoperability between wireless networks, network operators and devices.  ETSI is part of 3GPP.[18]  ETSI publishes O-RAN specifications[19] and also publishes documents created by Industry Specification Groups (ISGs), such as Group Specifications, which provide technical requirements and explanatory material and are produced and approved by specific ISGs.[20]

---

[13] https://datatracker.ietf.org/doc/html/rfc9256
[14] https://datatracker.ietf.org/doc/html/rfc9256
[15] https://datatracker.ietf.org/doc/html/rfc9352
[16] *See, e.g.*, https://eantc.de/wp-content/uploads/2022/03/EANTC-InteropTest2022-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/04/EANTC-InteropTest2023-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/12/EANTC-MPLSSDNInterop2024-TestReport-v1.3.pdf (Nokia, Ericsson, Ribbon Communications, Juniper etc.).
[17] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8663.html#name-contributors (Verizon); https://www.rfc-editor.org/rfc/rfc9256.html#name-contributors (Verizon); https://www.rfc-editor.org/rfc/rfc9352.html#name-contributors (Ericsson).
[18] *See, e.g.*, https://www.3gpp.org/ftp/Information/presentations/Newcomers_quick-start/Newcomers_slides.pdf.
[19] *Id.*
[20] *See, e.g.*, https://www.etsi.org/standards/types-of-standards.

44.    In May 2024, 3GPP and ETSI published a technical specification entitled "5G; Management and orchestration; 5G Network Resource Model (NRM); Stage 2 and Stage 3" as 3GPP TS 28.541 version 18.7.0 Release 18 and ETSI TS 128 541 V18.7.0 (2024-05).[21]  That requirements document specifies that the allowed tunnelling mechanism attribute for a network slice includes SRv6.[22]

45.    One ETSI ISG is the Fifth Generation Fixed Network ISG, which focuses on the "evolution of the fixed network needed to match and further enhance the benefits that 5G has brought to mobile networks and communications" and addresses, among other things, "end-to-end full stack slicing."[23]

46.    The Fifth Generation Fixed Network (F5G) ISG produced and approved a Group Specification that "specifies the End-to-End network architecture, features and related network devices/elements' requirements for F5G, including on-premises, Access, IP and Transport Networks."[24]  It lists IETF RFC 8402 and IETF RFC 8986 as normative references.[25]  ETSI normative references are necessary for the application of the standard in which they are mentioned.[26]

---

[21] *See, e.g.*,
https://www.etsi.org/deliver/etsi_ts/128500_128599/128541/18.07.00_60/ts_128541v180700p.pdf.
[22] *Id.* at pg. 396.
[23] *See, e.g.*, https://www.etsi.org/committee/1696-f5g
[24] *See, e.g.*, ETSI GS F5G 014 V1.1.1 (2023-05) *available at*
https://www.etsi.org/deliver/etsi_gs/F5G/001_099/014/01.01.01_60/gs_F5G014v010101p.pdf at sec. 1.
[25] *Id.* at sec. 2.1 ([5] amd [6]).
[26] *See, e.g.*, https://portal.etsi.org/Services/editHelp/Search/FAQs/Normative-informative-references.

47.    The F5G Group Specification states that "Segment Routing is the preferred technology for implementing slicing in the aggregation network."[27]  It specifies that "SRv6 shall be used as the bearer connection on the IP/Ethernet fabric Underlay Plane,"[28] "[t]he OLT shall support slicing per VLAN, SRv6 and OTN on the uplink port(s),"[29] "[t]he IP Network shall support SRv6 Best Effort (BE)" and "should support SRv6 Traffic Engineering (TE)."[30]

48.    A different ETSI ISG, the Network Functions Virtualization ("NFV") ISG, produced and approved a Group Specification specifying performance metrics and methods for benchmarking networks in NFV infrastructure ("NFVI").[31]  It states that "[p]rotocols like VLAN, VXLAN, GRE, VXLAN-GPE, SRv6 and SFC NSH are needed in NFVI deployments." [32] Ribbon's customers such as AT&T and Verizon and technology partners such as Ericsson are members of the NFV ISG.[33]  The Group Specification was "produced and approved by the Fifth Generation Fixed Network (F5G) ETSI Industry Specification Group (ISG) and represents the

---

[27] *See, e.g.*, ETSI GS F5G 014 V1.1.1 (2023-05) *available at* https://www.etsi.org/deliver/etsi_gs/F5G/001_099/014/01.01.01_60/gs_F5G014v010101p.pdf at sec. 5.4.1.11.
[28] *Id.* at 5.4.3.1.2.
[29] *Id.* at [R-54]
[30] *Id.* at [R-89] and [R-90].
[31] *See, e.g.*, ETSI GS NFV-TST 009 V3.4.1 (2020-12) *available at* https://www.etsi.org/deliver/etsi_gs/NFV-TST/001_099/009/03.04.01_60/gs_NFV-TST009v030401p.pdf.
[32] *Id.*
[33] *See, e.g.*, https://portal.etsi.org/TB-SiteMap/NFV/NFV-List-members

views of those members who participated in this ISG."[34]  Ribbon has participated in the NFV

ISG.[35]  An employee served as its ETSI .[36]

49.    In October 2023, the NFV ISG also published a Group Report that analyzed SRv6

and SR-MPLS and discussed RFC 8402, RFC 8754, RFC 8986 and RFC 9256.[37]  Ribbon

advertises products such as its Virtual Network Function Manager as "part of a standard-based

ETSI NFV architecture."[38]

**Accused Instrumentalities**

50.    On information and belief, Ribbon has developed and provides a number of SR-

capable solutions such as Ribbon's Neptune product family[39], 5G native solutions, [40] HFR

---

[34] *See, e.g.*, ETSI GS NFV-TST 009 V3.4.1 (2020-12) *available at*
https://www.etsi.org/deliver/etsi_gs/NFV-TST/001_099/009/03.04.01_60/gs_NFV-
TST009v030401p.pdf.
[35] https://www.etsi.org/newsroom/blogs/entry/nfv-21-even-the-snow-couldn-t-stop-the-ramp-up-
of-release-3-work-or-the-improvement-in-release-2-
specifications?highlight=WyJjYWWJib24iLCJjb21tdW5pY2F0aW9ucyIsImNvbW11bmljYXRp
25zJyIsInJpYmJvbiBjb21tdW5pY2F0aW9ucyJd.
[36] https://www.linkedin.com/in/1jeremyfuller/%20(ETSI NFV IFA chair and expert technical advisor for Network
Functions Virtualisation (NFV) technology).
[37] *See, e.g.*, ETSI GR NFV-IFA 035 V5.1.1 (2023-10) *available at*
https://www.etsi.org/deliver/etsi_gr/NFV-IFA/001_099/035/05.01.01_60/gr_NFV-
IFA035v050101p.pdf.
[38] https://ribboncommunications.com/products/service-provider-products/network-functions-virtualization/vnf-
manager.
[39] https://ribboncommunications.com/products/service-provider-products/ip-routing#jump-2;
https://ribboncommunications.com/products/service-provider-products/ip-routing;
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Brochures/BR%20
Ribbon%20Neptune%20Family.pdf.
[40]
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Application%20N
otes/AN%205G%20Native%20Transport%20Solution.pdf.

offerings[41], and orchestration solutions such as Muse[42].  Below is an exemplary description of some of the SR capabilities provided by Ribbon:

| Segment Routing (SR) | • SR-MPLS |
|---|---|
| | • ISIS, OSPF, BGP extensions to segment routing |
| | • TI-LFA |
| | • Segment Routing Traffic Engineering (SR-TE, SR Policies) |
| | • PCE, PCC initiated SR Policies |
| | • Path Protection |
| | • TI-LFA Local Repair Protection |
| | • Anycast SID |
| | • Binding SID |
| | • SR, SR-TE OAM |
| | • Flexible Algorithm |
| | • BGP Color Extended Community |

https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Data%20Sheets/DS%20Neptune%20NPT-1100.pdf.

51. On information and belief, Ribbon's SR-capable solutions support the functionality specified in the SR RFCs ("Accused Instrumentalities").

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,652,133

52.    The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

53.    On May 12, 2020, U.S. Patent No. 10,652,133 ("the '133 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

---

[41] *See, e.g.*,
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Data%20Sheets/DS%20HFR%20Networks%20FlexHaul%20M6424.pdf;
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Data%20Sheets/DS%20Management%20System%20HFR.pdf.
[42] *See, e.g.*,
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Brochures/Ribbon-Networking-Portfolio.pdf;
https://learn.rbbn.com/hubfs/Corporate%20Marketing%20(TOP%20LEVEL)/Brochures/BR%20Muse%205G%20Native%20Domain%20Orchestration.pdf.

54.    Plaintiff is the assignee and owner of the right, title and interest in and to the '133 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

55.    The '133 patent is valid and enforceable.  A true and correct copy of the '133 patent is attached as Exhibit A.

56.    Upon information and belief, Defendant has and continues to directly infringe at least claim 12 of the '133 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

57.    Exemplary infringement analysis showing infringement of claim 12 of the '133 patent is set forth in Exhibit H. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '133 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '133 patent.

58.    The Accused Instrumentalities infringed and continue to infringe claim 12 of the '133 patent during the pendency of the '133 patent.

59.    MRT has been harmed by Ribbon's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,574,562

60.    The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

61.    On February 25, 2020, U.S. Patent No. 10,574,562 ("the '562 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

**Page 15 of 22**

62.    Plaintiff is the assignee and owner of the right, title and interest in and to the '562 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

63.    The '562 patent is valid and enforceable.  A true and correct copy of the '562 patent is attached as Exhibit B.

64.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '562 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

65.    Exemplary infringement analysis showing infringement of claim 1 of the '562 patent is set forth in Exhibit I.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '562 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '562 patent.

66.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '562 patent during the pendency of the '562 patent.

67.    MRT has been harmed by Ribbon's infringing activities.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,652,134**

68.    The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

69.    On May 12, 2020, U.S. Patent No. 10,652,134 ("the '134 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

**Page 16 of 22**

70. Plaintiff is the assignee and owner of the right, title and interest in and to the '134 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

71. The '134 patent is valid and enforceable. A true and correct copy of the '134 patent is attached as Exhibit C.

72. Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '134 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

73. Exemplary infringement analysis showing infringement of claim 1 of the '134 patent is set forth in Exhibit J. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '134 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '134 patent.

74. The Accused Instrumentalities infringed and continue to infringe claim 1 of the '134 patent during the pendency of the '134 patent.

75. MRT has been harmed by Ribbon's infringing activities.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,757,010**

76. The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

77. On August 25, 2020, U.S. Patent No. 10,757,010 ("the '010 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

78.     Plaintiff is the assignee and owner of the right, title and interest in and to the '010 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

79.     The '010 patent is valid and enforceable.  A true and correct copy of the '010 patent is attached as Exhibit D.

80.     Upon information and belief, Defendant has and continues to directly infringe at least claim 2 of the '010 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

81.     Exemplary infringement analysis showing infringement of claim 2 of the '010 patent is set forth in Exhibit K.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '010 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '010 patent.

82.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '010 patent during the pendency of the '010 patent.

83.     MRT has been harmed by Ribbon's infringing activities.

**COUNT V – INFRINGEMENT OF U.S. PATENT NO. 10,389,624**

84.     The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

85.     On August 20, 2019, U.S. Patent No. 10,389,624 ("the '624 patent"), entitled "SCOPED IDENTIFIER SPACE ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

86.     Plaintiff is the assignee and owner of the right, title and interest in and to the '624 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

87.     The '334 patent is valid and enforceable.  A true and correct copy of the '624 patent is attached as Exhibit E.

88.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '624 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

89.     Exemplary infringement analysis showing infringement of claim 1 of the '624 patent is set forth in Exhibit L.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '624 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '624 patent.

90.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '624 patent during the pendency of the '624 patent.

91. MRT has been harmed by Ribbon's infringing activities.

**COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 10,404,583**

92.     The allegations set forth in the foregoing paragraphs are incorporated into this Sixth Claim for Relief.

93. On September 3, 2019, U.S. Patent No. 10,404,583 ("the '583 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS USING MULTIPLE OUTSIDE-SCOPE IDENTIFIERS" was duly and legally issued by the United States Patent and Trademark Office.

94. Plaintiff is the assignee and owner of the right, title and interest in and to the '583 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

95. The '583 patent is valid and enforceable.  A true and correct copy of the '583 patent is attached as Exhibit F.

96. Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '583 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

97. Exemplary infringement analysis showing infringement of claim 1 of the '583 patent is set forth in Exhibit M.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '583 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '583 patent.

98. The Accused Instrumentalities infringed and continue to infringe claim 1 of the '583 patent during the pendency of the '583 patent.

99. MRT has been harmed by Ribbon's infringing activities.

### COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 10,594,594

100.    The allegations set forth in the foregoing paragraphs are incorporated into this Seventh Claim for Relief.

101.    On March 17, 2020, U.S. Patent No. 10,594,594 ("the '594 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

102.     Plaintiff is the assignee and owner of the right, title and interest in and to the '594 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

103.     The '594 patent is valid and enforceable.  A true and correct copy of the '594 patent is attached as Exhibit G.

104.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '594 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

105.     Exemplary infringement analysis showing infringement of claim 1 of the '594 patent is set forth in Exhibit N.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Ribbon with respect to the '594 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '594 patent.

106.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '594 patent during the pendency of the '594 patent.

107.     MRT has been harmed by Ribbon's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MRT demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MRT demands judgment for itself and against Ribbon as follows:

A.     An adjudication that the Ribbon has infringed the Patents-in-Suit;

B.     An award of damages to be paid by Ribbon adequate to compensate MRT for Ribbon's past infringement of the Patents-in-Suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of MRT's reasonable attorneys' fees; and

D.     An award to MRT of such further relief at law or in equity as the Court deems just and proper.

Dated: August 7, 2025                    DEVLIN LAW FIRM LLC

                                         */s/  Timothy Devlin*
                                         Timothy Devlin
                                         Derek Dahlgren (pro hac vice to be filed)
                                         1526 Gilpin Avenue
                                         Wilmington, Delaware 19806
                                         Telephone: (302) 449-9010
                                         Facsimile: (302) 353-4251
                                         tdevlin@devlinlawfirm.com
                                         ddahlgren@devlinlawfirm.com

                                         G. Andrew Gordon, (pro hac vice to be filed)
                                         Andrew Gordon Law Firm PLLC
                                         6518 Ryeworth Dr.
                                         Frisco, TX 75035
                                         Phone: (408) 390-4473
                                         andrew@agordonlawfirm.com

                                         *Attorneys for Plaintiff Morris Routing Technologies, LLC*